# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 23-3914-GW-AGRx | Date | August 30, 2023 |
|---|---|---|---|
| Title | *Vivek Shah v. Blueground US, Inc.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON CONTINUED HEARING ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [13]

Attached hereto is the Court's Tentative Ruling on Continued Hearing on Plaintiff's Motion [152] set for hearing on August 31, 2023 at 8:30 a.m.

:

Initials of Preparer   JG

**_Shah v. Blueground US, Inc._**, Case No. 2:23-cv-03914-GW-(AGRx)
Tentative Ruling on Continued Hearing on Motion for Default Judgment

Vivek Shah, plaintiff *pro se* ("Plaintiff"), has the burden of establishing this Court's subject matter jurisdiction over this action he brought against defendant Blueground US, Inc. ("Defendant"). Previously, Plaintiff obtained an entry of clerk's default as to the Defendant (*see* Docket No. 12) and thereafter moved for a default judgment ("Motion," *see* Docket No. 13). This Court issued a tentative ruling on the Motion ("Tentative") which indicated that it had questions as to whether Plaintiff had established a basis for diversity jurisdiction. *See* Docket No. 16. At the hearing on the Motion, Plaintiff stated that he had filed a "supplemental points and authorities" ("Supplemental," *see* Docket No. 17) in response to the Tentative.

Following its review of Plaintiff's Supplemental that he prepared in response to the Court's initial commentary on this topic, the Court concludes that he has not sustained his burden of establishing subject matter jurisdiction. As a result, his motion seeking a default judgment will be denied, and the action will be dismissed.

"Some individuals . . . are not considered to be citizens of any state" for purposes of 28 U.S.C. § 1332(a). *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 635 (7th Cir. 2021); *see also D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 126 (1st Cir. 2011) ("[C]itizens of the United States . . . still might be citizens of no state at all under the diversity statute."); *Wasson v. Northrup Worldwide Aircraft Servs., Inc.*, 443 F.Supp. 400, 405 n.13 (W.D. Tex. 1978) ("It may be possible to have a case in which a party is a citizen of the United States and yet is not a citizen of any state for diversity purposes. One of the aspects of diversity jurisdiction that 'is inherently not founded in reason' is that a party who is consistently mobile or who travels from one job to another could find the door to a federal forum entirely closed should he seek to invoke diversity jurisdiction.") (quoting 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3612 at 722). Usually, that involves individuals who are American citizens living/domiciled abroad. This Court concludes that the principle applies here as well, at least under these circumstances. *See, e.g.*, *McCracken v. Murphy*, 328 F.Supp.2d 530, 535 (E.D. Pa. 2004); *see also Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("[A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or

1

abode in a particular place, and [intends] to remain there permanently or indefinitely.'") (quoting *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940)); *Brosnan v. Avildsen*, No. C-07-06438 EDL, 2008 WL 2357248, *3 (N.D. Cal. June 6, 2008) (LaPorte, Mag. J.) (noting that a preference for "a nomadic lifestyle" "runs contrary to the requisite intention to remain" in a particular state for purposes of diversity jurisdiction); *compare Perez v. K & B Transp., Inc.*, 967 F.3d 651, 654-55 (7th Cir. 2020) (concluding that long-haul truck driver who spent vast majority of her time on the road and currently had no residence of her own was still a Texas citizen where, among other things, she had begun staying with family members there when she was not on the road and had a Texas commercial driver's license).

Plaintiff, who alleged in his Complaint that he has a "principal place of residence" in Illinois, *see* Complaint ¶ 2, is now self-described as a "digital nomad," providing a citation to a Wikipedia page for a general understanding of the concept. *See* Docket No. 17, at 2 & n.1. In essence, he is an itinerant, as an exhibit to his recent motion for default judgment confirms: he purports to have lived in 18 different locations – none of which were in Illinois – since September 2, 2022 (with three different unaccounted-for breaks in that list).[1] *See* Declaration of Vivek Shah ("Shah Decl."), Docket No. 13-1, ¶ 9 & Exh. B (Docket No. 13-3).

In addition to these citizenship problems, the Court does not believe that Plaintiff has advanced a good faith claim for the necessary minimum amount-in-controversy.[2] As the Court previously observed in this case, Plaintiff's claim is based on an alleged wrongful/discriminatory denial of a one-month apartment rental. *See* Complaint ¶ 11. The amount he reports being out-of-pocket for that month is $4,748.87. *See* Docket No.

---

[1] Plaintiff has expressed confusion with respect to when his citizenship/domicile status is to be adjudged. The pertinent time is as of when he filed his lawsuit, or May 21, 2023. *See, e.g.*, *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004); *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). On that date, he had been in his second day of a short-term housing situation in Los Angeles, after having spent a week in Santa Monica, California, a stay which immediately followed him living in nine different locations since his last "residence" in California (just a few short months earlier, on January 11, 2023), five of which were foreign countries. *See* Docket No. 13-3.

[2] Though his Complaint originally sought attorneys' fees, Plaintiff (who represents himself in this action, at least currently) has – at least for the time being – disclaimed any pursuit of such relief. *See* Docket No. 17, at 1.

13-3. He believes he is entitled to savings he would have had on future potential rentals through Defendant, but Defendant had no reason to know of that potentiality at the time it allegedly wrongfully denied Plaintiff his first attempted rental.

Plaintiff's claim for emotional distress damages is admittedly entirely speculative, not pegged to any actual expenses,[3] but simply calculated at a multiple of two times what he believes were his actual damages. If $4,748.87 is the actual damages amount his Complaint puts at stake in good faith, even assuming that a 2-times-actual damages amount was an appropriate estimation for emotional distress damages, that adds $9,497.74 to the mix.

Plaintiff also claims an entitlement to punitive damages, which he again pegs to a multiple of his professed actual damages – this time, a multiple of nine. The Court has a serious question about whether Plaintiff can bring his claim under Cal. Code Regs. tit. 2, § 12269(a)(5) *at all*. He believes he is able to do so because of California Government Code § 12989.1, and any action under that section leaves a defendant open, potentially, to punitive damages. *See* Cal. Gov't Code § 12989.2. But this Court has been unable to locate any decision brought under Section 12989.1 that: 1) recognizes the statute as the source of a private right of action *and* 2) that was based upon the violation of a nondiscrimination *regulation*, as opposed to a nondiscrimination statute. The Court remains entirely unconvinced that such a regulation gives a private individual, such as Plaintiff, the ability to sue (at least for damages, let alone punitive damages) in court. If there is no such basis, the value of Plaintiff's action would almost necessarily be $0. However, even giving Plaintiff all the benefit of doubt in the world (and fully-crediting his proposed method of calculation), a nine-times-actual damages figure for punitive damages would be $42,739.83 if actual damages are $4,748.87.

Assuming that Plaintiff does have a right to bring his action for a violation of Cal.

---

[3] Plaintiff has reported that, as a result of Defendant's alleged conduct, he has "worried a lot that other companies might also deny me housing[,] . . . [have] felt severely depressed and have developed general anxiety each time I apply for housing somewhere." Shah Decl., ¶ 12. Yet, his materials supplied along with his request for default judgment reflect that he has apparently had no trouble at all procuring *18 different rental arrangements* over a less-than-2-year period. Of course, this does not mean that Plaintiff might not still have "worried a lot," been "severely depressed," and had "general anxiety" on the topic, but it certainly leaves one to wonder about the good faith nature of the claim as well as the actual value of that purported mental distress.

3

Code Regs. tit. 2, § 12269(a)(5), he also seeks to value his request for injunctive relief. He is correct that such value may be measured from the viewpoint of either side to the litigation, and he believes that it would cost Defendant upwards of $75,000 just to change and implement its policy.  But it would cost Defendant almost nothing to simply *change* its policy, probably little more than the cost of a few keystrokes in various corporate documents and some minimal staff-training.  As to implementation, Plaintiff has given the Court no reason to believe that Defendant gets requests from an appreciable number of people with a criminal background, and any attempt to guess at such a number (and to value actually having to accommodate them, as opposed to shunning them) would be entirely speculative.  This does not even account for the fact that any such change in operation would appear to only be required *in California* (since Defendant is a Delaware corporation with a principal place of business in New York and there is no basis to find that Cal. Code Regs. tit. 2, § 12269(a)(5) would come into play outside of California). As such, the value of such injunctive relief, either as the Complaint is currently configured or in connection with any possible amendment to state, instead, a claim under California Business and Professions Code § 17200,[4] would be very little more than zero.

       To be clear, even the figures the Court itself has calculated here appear grossly-overvalued.  There is no indication that Plaintiff has incurred any out-of-pocket expenses for any emotional distress.  Hitting Defendant – a non-California citizen – with a punitive damages award for violating a California regulation as to which it is decidedly unclear whether there is any private right of action is incredibly unlikely.  But totaling up the figures would still produce only $56,986.44 in-controversy, with an entirely-speculative (other than exceedingly minimal) injunctive relief value added on.

       California's courts are better-situated to answer the question of whether a plaintiff can sue to enforce Cal. Code Regs. tit. 2, § 12269(a)(5) under California Government Code § 12989.1 (or via some other private form of action).  This Court's determination that Plaintiff has failed to satisfy his burden – both with respect to diversity of citizenship

---

[4] Plaintiff identifies a Section 17200 claim as a possibility if he is not allowed to sue directly under Cal. Code Regs. tit. 2, § 12269(a)(5) (or California Government Code § 12989.1).  *See* Docket No. 17, at 4.  The problem (at least for purposes of diversity jurisdiction) with that, however, is that Section 17200 does not allow for recovery of damages.  The value for such a claim would therefore be capped at the value of the injunctive relief (one of the few permissible types of relief available under Section 17200), which, as noted above, is surely a very small value, nowhere near $75,000 by itself.

and the necessary minimum amount of controversy – will allow Plaintiff the opportunity to explore that path, should he so choose. Plaintiff's motion seeking a default judgment is denied. In addition, the action is dismissed on jurisdictional grounds, without leave to amend in this forum, but without prejudice to Plaintiff re-filing his case in state court if he decides to do so.